IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>vs.<br><br>TANNER GILLMAN,<br><br>　　Defendant, | MEMORANDUM DECISION<br>AND ORDER<br><br><br>Case No. 2:09-CR-896 |

The defendant, Tanner Gillman, moves this court to dismiss the indictment in the above-captioned matter, arguing that the statute under which he was charged, 18 U.S.C. § 922 (g)(8) violates the Second Amendment of the United States Constitution both facially and as applied to Mr. Gillman. The court heard oral argument on this matter on June 4, 2010. Vanessa M. Ramos argued on behalf of Mr. Gillman. J. Drew Yeates argued on behalf of the United States. In addition, both the United States and the defendant have submitted written argument relating to the motion. The court, after careful review of the parties' submissions and arguments, enters the following Memorandum Decision and Order.

BACKGROUND

In the limited context of this motion to dismiss, Mr. Gillman accepts the facts the United States provided during discovery. The court, therefore, will also rely on this presentation of the

facts.

Tanner Gillman is charged with possessing a firearm while subject to a protective order pursuant to 18 U.S.C. § 922(g)(8). The Third District Court for the State of Utah entered the protective order on March 3, 2009, following a hearing at which both Mr. Gillman and his former girlfriend, Stephanie Valdez, were present. As grounds for the protective order, Ms. Valdez alleged that in December 2008 Mr. Gillman slashed the tires of her vehicle. The state court issued the protective order, which prohibited Mr. Gillman from possessing a gun or other weapon, after finding that such possession would pose a serious threat of harm to the petitioner. Just below the gun restriction on gun possession, the protective order stated, "Warning! It is a federal crime for you to have, possess, transport, ship, or receive any firearm or ammunition, including hunting weapons, while this protective order is in effect, even if" the court did not initial this prohibition. (Pl.'s Br. Ex. 2 at 2). This gun prohibition, as well as all other restrictions in the protective order, will expire when the state court dismisses the protective order.

Several months after the court issued the protective order, in November 2009, Mr. Gillman posted an ad for a Bushmaster XM-15 .223 caliber rifle on KSL.com, a website that hosts online classified advertisements. The ad indicated that Mr. Gillman would sell his firearm for $1,149 or a "possible trade for other guns, motorcycle, outdoor stuff, tv and cash, make offers." The Bureau of Alcohol, Tobacco, Firearms, and Explosives (the ATF) received information about Tanner's ad and began an investigation. After obtaining a copy of the protective order, an undercover ATF agent began to correspond with Mr. Gillman about purchasing the gun. After several emails between the ATF agent and Mr. Gillman, the two

parties agreed to meet on November 23, 2009 for the sale of the gun. At the meeting, the defendant agreed to sell to the undercover agent the Bushmaster rifle and 100 rounds of .223 caliber ammunition in exchange for $450. Mr. Gillman also agreed to sell one Glock Model 23 .40 caliber handgun and one Walther Model P22 .22 caliber pistol. The agent completed three bills of sale for the firearms transferred. Mr. Gillman was then arrested.

Mr. Gillman's criminal history is limited to one criminal mischief conviction, which relates to the same tire-slashing incident on which the protective order was based. Mr. Gillman entered a no contest plea to this Class C misdemeanor. The state court sentenced him to probation and a fine. Mr. Gillman later decided to appeal this conviction and sentence. That appeal is currently pending in the Third District Court for the State of Utah.

DISCUSSION

This case presents the question of whether a statutory disqualification from gun possession that is temporary and based on a judicial determination of risk violates the Second Amendment's guarantee of an individual's right to keep and bear arms. Mr. Gillman argues that 18 U.S.C. § 922 (g)(8) operates as a status crime that punishes persons who do not pose a threat to public safety. In his case in particular, Mr. Gillman argues that § 922(g)(8) restricts his right to own a gun even though there is no evidence to support an inference that he is a threat to public safety. Mr. Gillman points out that the protective order against him was based on a property crime rather than crime involving bodily harm or a threat of bodily harm. The government opposes the motion, arguing first that the motion is improper. Additionally, the government argues that § 922(g)(8) is constitutional under any standard of review because it prohibits only

those persons who a court has determined pose a threat of violence.

The court finds the defendant's pretrial challenge to the dismissal to be proper. The defendant is not challenging the sufficiency of the evidence supporting the charge, but instead is arguing that, as a matter of law, Mr. Gillman cannot be charged with the instant offense. This is proper under Tenth Circuit law. *See, e.g., United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006) (allowing dismissal of indictment when "'as a matter of law, the government is incapable of proving its case beyond a reasonable doubt.'") (quoting *United States v. Hall*, 20 F.3d 1084,1088 (10th Cir. 1994)).

Moving to the merits of the case, the court concludes that the prohibition on possession of firearms by persons subject to protective orders does not violate Mr. Gillman's right to keep and bear arms as newly construed by the United States Supreme Court in *District of Columbia v. Heller*, 128 S.Ct. 2783, 2799 (2008).

In *Heller*, the Supreme Court resolved an ongoing debate about the meaning of the Second Amendment when it determined that based on "both [its] text and history, . . . the Second Amendment conferred an individual right to keep and bear arms." *Id.* Relating the right to self-defense, the court struck down a District of Columbia law that banned handgun possession in the home and required rendering other lawful firearms inoperable when possessed in the home. *Id.* at 2822. According to the Supreme Court, "[f]ew laws in the history of our Nation have come close to the severe restriction of the District's handgun ban." Limiting its decision to the Washington D.C. law, the Court's decision was limited in scope. The majority opinion did not determine the level of scrutiny that should apply to the newly articulated individual right and

4

mindfully acknowledged that the right was "not unlimited" and that individuals may be "disqualified from the exercise of Second Amendment rights." *Id.* at 2799 & 2822.

In a discussion of possible limitations, the Court stated "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 2816-17. The Court indicated that this list of permitted prohibitions was not exhaustive, but only an exemplary sample of longstanding prohibitions that are "presumptively lawful regulatory measures." *Id.* at 2817 n.26.

Without more explanation, it is unclear where the boundaries are for what should be considered a presumptively lawful restriction. Yet, it is fair to assume that the prohibition at issue in this case is within such contours. Compared to the statute at issue in *Heller*, § 922(g)(8) is much narrower in scope and more limited in its temporal applicability. Section 922(g)(8), which is codified in the same statute as the restriction on felon in possession, prohibits a person from possessing or receiving a firearm if he

> is subject to a court order that–
>   (A) was issued after a hearing of which [he] received actual notice . . . and had an opportunity to participate;
>   (B) restrains [him] from harassing, stalking, or threatening an intimate partner . . . or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury . . . ; and
>   (C)(i) includes a finding that [he] is a credible threat to the physical safety of such intimate partner . . .; or
>   (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury.

Like the other § 922(g) restrictions, the restriction on persons subject to protective orders is a "narrowly crafted limit[] on when a citizen may possess a firearm [and] is well tuned to legitimate concerns." *See United States v. Erwin*, 2008 U.S. Dist. LEXIS 78148, \*3. It is limited to orders entered only after an open court hearing and an evidence-based judicial determination that a person should be restrained from threatening or otherwise placing an intimate partner in fear. The restriction is also temporary; it ceases once the restraining order is terminated. In this light, the prohibition seems much more circumscribed and less interfering than the restriction on convicted felons, and therefore, an excellent candidate for the Supreme Court's intentional carve-out.

Courts across this nation seem to agree. Since *Heller,* this court's counterparts have repeatedly found both § 922(g) and specifically § 922(g)(8) constitutional. *United States v. White*, No. 07-00361-WS, 2008 WL 3211298 \*1 (S.D. Ala. Aug. 6, 2008) ("On its face, then, *Heller* did not disturb or implicate the constitutionality of § 922(g), and was not intended to open the door to a raft of Second Amendment challenges to § 922(g) convictions."); *United States v. Grote*, 2009 WL 853974 \*7 (E.D. Wash. Mar. 26, 2009)*; United States v.* Montalvo, 2009 WL 667229 \*4 (W.D.N.Y. Mar. 12, 2009); United *States v. Erwin*, 2008 WL 4534058 \*3 (N.D.N.Y. Oct. 6, 2008); *United States v.* Luedtke, 589 F.Supp.2d 1018, 1023 (E.D. Wisc. 2008); United *States v. Knight*, 574 F.Supp.2d 224, 1023 (E.D. Wisc. 2008).

Moreover, even before *Heller,* two courts held that § 922(g)(8) did not violate the Second Amendment. *United States v. Lippman,* 369 F.3d 1039, 1044 (8th Cir. 2004); *United States v. Emerson*, 270 F.3d 203, 261-63 (5th Cir. 2001). The Fifth Circuit when reviewing the statute

interpreted the Second Amendment to provide an individual right and still determined that § 922(g)(8) did not violate that right.

Considering the repeated validation of the prohibition at issue and the limited holding in *Heller*, the court concludes that § 922(g)(8) does not infringe on Mr. Gillman's Second Amendment rights. Nothing the Supreme Court said in *Heller* or any of the circumstances relating to the underlying offense gives this court cause to cast into doubt the prohibition on weapon possession by persons subject to protective orders. This law is less restrictive and its target pool is much narrower than the law at issue in *Heller*. It is also less restrictive and more narrowly applied than the laws carved out as presumptively lawful by *Heller*. Accordingly, Mr. Gillman's Motion to Dismiss is DENIED.

IT IS SO ORDERED.

DATED this 24th day of June, 2010.

_____

Dee Benson
United States District Judge